IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

ROBERT T.,

                        Plaintiff,

        v.                                Civil Action No.
                                           3:21-CV-1120 (DEP)

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

                       Defendant.

─────────────────────────────────────

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM     PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.         CANDACE LAWRENCE, ESQ.
OFFICE OF GENERAL COUNSEL    VERNON NORWOOD, ESQ.
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER[1]

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that he was not disabled at the relevant times and, accordingly, is ineligible for the supplemental security income ("SSI") benefits for which he has applied.  For the reasons set forth below, I conclude that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.

I.   BACKGROUND

Plaintiff was born in November of 1973, and is currently forty-nine years of age.  He was forty-five years old on November 13, 2019, the date on which he filed his application for benefits.  Plaintiff stands five feet and three inches in height, and weighed approximately one hundred and seventy pounds during the relevant time period.  Plaintiff lives alone in Binghamton, New York.

In terms of education, plaintiff reports that he attended school until

---

[1]    This matter is before me based upon consent of the parties, pursuant to 28 U.S.C. § 636(c).

the ninth grade and has not obtained a GED.[2]  He has not been employed in the last fifteen years, in part because he was in prison for a portion of that time.

Plaintiff alleges that he suffers from physical issues related to his feet, as well as mental health issues, which he identifies as bipolar disorder and schizophrenia, but which has also been diagnosed in the record as a dissociative identity disorder.  He has received treatment for his mental impairments during the relevant period from sources at Pennsylvania State Correctional Institution ("SCI") Coal Township, and, upon his release from that facility, from Lourdes Primary Care and Family & Children's Society, and has been treated for his foot impairments by Lourdes Primary Care and Lourdes Riverside Podiatry.

At the administrative hearing related to his claim, plaintiff testified that he is limited in his ability to function both by impairments in his feet and his mental health impairments.  As to his feet, plaintiff reports that he has been undergoing surgery for his condition and that impacts his ability to engage in certain activities.  With regard to his mental impairments, plaintiff testified

---

[2]      There appears to be a discrepancy in the record regarding plaintiff's education. During the administrative hearing in this matter, plaintiff stated his belief that he completed the ninth grade, but on his function report he noted that the highest grade he completed was the eighth grade.  *See* Administrative Transcript ("AT") 34, 208.

that he has thirteen different personalities and does not know which one will be present each day.  He has difficulty being around people because they bother and frustrate him.  He participated in special education classes while in school because of a learning disability and also has issues with his memory such that he usually needs to write things down to remember them.  Plaintiff reports that he is taking Haldol for his mental health symptoms and also participating in counseling by telephone because of the COVID-19 pandemic.  He further reports that he spends most of his day watching television, playing games, and listening to music to stay calm.  He can cook without interference from his mental impairments and can do his own shopping if he makes a list, but his daughter has to help him with understanding the contents of his mail and staying organized.

II.   PROCEDURAL HISTORY

    A.   Proceedings Before the Agency

Plaintiff applied for SSI payments under Title XVI of the Social Security Act on November 13, 2019.  In support of his application, he claimed to be disabled due to bipolar disorder and schizophrenia.

A hearing was conducted on February 1, 2021, by ALJ Jeremy G. Eldred to address plaintiff's application for benefits.  ALJ Eldred issued an unfavorable decision on February 26, 2021.  That opinion became a final

determination of the agency on September 8, 2021, when the Social
Security Appeals Council ("Appeals Council") denied plaintiff's request for
review of the ALJ's decision.

B.   The ALJ's Decision

In his decision, ALJ Eldred applied the familiar, five-step sequential
test for determining disability.  At step one, he found that plaintiff has not
engaged in substantial gainful activity during the relevant period.
Proceeding to step two, ALJ Eldred found that plaintiff suffers from severe
impairments that impose more than minimal limitations on his ability to
perform basic work functions, including pes planus of both feet, pes valgus,
capsulitis of the feet, hallux extensus of the right foot, bipolar disorder, and
personality disorder.

At step three, ALJ Eldridge examined the governing regulations of the
Commissioner setting forth presumptively disabling conditions (the
"Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that
plaintiff's conditions do not meet or medically equal any of those listed
conditions, specifically considering Listings 1.02, 1.03, 12.04, and 12.08.

ALJ Eldred next surveyed the available record evidence and
concluded that, during the relevant time period, plaintiff retained the
residual functional capacity ("RFC") to perform a range of sedentary work

with the following restrictions:

> he can understand, remember, and carry out simple and routine tasks, can concentrate, persist, and maintain pace in a work setting to the extent necessary to perform only simple and routine tasks, can interact no more than occasionally with supervisors, co-workers, or the public, and can appropriately adapt to ordinary changes in an unskilled occupation that involves only simple and routine tasks.

ALJ Eldred found at step four that plaintiff does not have any past relevant work with which to compare the RFC.  Proceeding to step five, the ALJ elicited the testimony of a vocational expert ("VE") regarding how plaintiff's limitations would impact his ability to perform other available work in the national economy and concluded, in light of the VE's testimony, that plaintiff remains able to perform representative positions such as document preparer, table worker, and touch up screener.  Based upon these findings, ALJ Eldred concluded that plaintiff was not disabled during the relevant period.

C.   This Action

Plaintiff commenced this action on October 15, 2021.[3]  In support of

---

[3]     This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

his challenge to the ALJ's determination, plaintiff argues that the ALJ erred by (1) not properly accounting for the supported range of limitations in the administrative record, including (a) failing to reconcile the uncontradicted opinion evidence that plaintiff has a marked limitation in his ability to interact with the general public with the RFC finding that plaintiff can have occasional interaction, and (b) failing to properly account for the opined limitations in staying on task and maintaining attendance; (2) failing to develop the record by not seeking evidence from SCI Somerset from June 2010 through 2014, and from SCI Coal Township from May 2015 through November of 2019; and (3) relying on testimony from the vocational expert that was elicited in response to an incomplete hypothetical question that did not encompass all of the relevant limitations supported by the evidence in the record.  Dkt. No. 11.

Oral argument was conducted in this matter, by telephone, on February 8, 2023, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and

whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the

administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation

marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal

whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also

include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

     B.     <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

9

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.  Analysis

1.  The ALJ's Analysis of the Opinion Evidence

Plaintiff raises two distinct arguments related to the ALJ's assessment of the opinion evidence in the record. He first argues that the ALJ failed to account for a marked limitation in his ability to interact with the general public, given that such limitation is supported by all of the available opinion evidence, and failed to explain how he reconciled the opinion of the state agency psychiatric consultants who found that plaintiff was markedly limited in that area with his own RFC finding that plaintiff can interact

11

occasionally with co-workers, supervisors and the public.[4]  Dkt. No. 11, at

7-12.  Plaintiff also argues that the ALJ erred in failing to include limitations

related to the abilities to stay on task and maintain attendance despite the

fact that every medical source has opined that he has at least some

limitation in one or both of those areas.  Dkt. No. 12-14.

Because plaintiff's application was filed after March 27, 2017, this

case is subject to the amended regulations regarding opinion evidence.

Under those regulations, the Commissioner "will not defer or give any

specific evidentiary weight, including controlling weight, to any medical

opinion(s), . . . including those from your medical sources," but rather will

consider whether those opinions are persuasive by primarily considering

whether the opinions are supported by and consistent with the record in the

case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL

168819, at *5853 (stating that, in enacting the new regulations, the agency

was explicitly "not retaining the treating source rule").  An ALJ must

articulate in his or her determination as to how persuasive he or she finds

all of the medical opinions and explain how he or she considered the

---

4       "Occasionally" is defined as occurring from very little up to one-third of the time.
SSR 96-9p.

supportability[5] and consistency[6] of those opinions.  20 C.F.R. §

416.920c(b).  The ALJ also may – but is not required to – explain how he or

she considered the other relevant enumerated factors related to the

source's relationship with the claimant, including the length of any

treatment relationship, the frequency of examinations by the source and the

purpose and extent of the treatment relationship, whether the source had

an examining relationship with the claimant, whether the source specializes

in an area of care, and any other factors that are relevant to the

persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

a.  Social Interaction Limitations

In finding that plaintiff can perform a range of unskilled sedentary

work with, as is most relevant to this section, an ability to interact no more

than occasionally with supervisors, co-workers, and the public, the ALJ

found the opinions of the non-examining state agency consultants Dr. M.

---

[5]     On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[6]     On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

Juriga and Dr. E. Kamin to be persuasive, and the other relevant opinions to be unpersuasive.  Administrative Transcript ("AT") at 14-15.[7]  When completing the worksheet portion of their form assessments, both Dr. Juriga and Dr. Kamin found, most relevantly, that plaintiff is "markedly limited" in his ability to interact appropriately with the general public, but "moderately limited" in the other enumerated domains of social interaction, including accepting instructions from and responding appropriately to criticism from supervisors, getting along with co-workers or peers, and maintaining socially appropriate behavior.  AT 57, 68.  However, in the narrative portion of the form that contains their opinions, both physicians wrote that plaintiff retains the ability to meet the basic demands of unskilled work in a low contact setting.  AT 57-58, 69.

Plaintiff argues that the ALJ erroneously accepted the opinions of these two sources – to the extent that an opinion for a "low contact setting" could even be considered to be the equivalent of occasional interaction – without reconciling the internal inconsistency between those opinions and their work sheets finding that plaintiff is "markedly limited" in his ability to interact appropriately with the general public.  Dkt. No. 11, at 7-12.  In

---

[7]    The administrative transcript is found at Dkt. No. 10, and will be referred to throughout this decision as "AT __."

response, the Commissioner argues that there is no such inconsistency because, under the applicable agency guidance, the work sheet portion of the form is merely to assist the decisionmaker in assessing the presence and extent of certain limitations, but does not constitute an opinion regarding specific functional capabilities, and, even if it could be considered to be part of the sources' opinions, a marked limitation is not necessarily inconsistent with the limitation for occasional interaction included in the RFC.  Dkt. No. 13, at 10-13.

The Commissioner is correct that the work sheet portion of the relevant form on which state agency physicians render their findings does not constitute the source's opinion under the agency's own regulations and according to the form itself, which notes that, although "[t]he questions below help determine the individual's ability to perform sustained work activities, . . . the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)."  *See* AT 55.  However, that fact does not resolve the specific issue here.  The agency's Programs Operations Manual System ("POMS"), which provides guidance for agency adjudicators regarding how to process and decide claims, states that a selection of "markedly limited" in an area in the work sheet represents a finding that the evidence supports the conclusion that the individual "cannot

usefully perform or sustain the activity."   POMS DI 24510.063.B.3.

Accordingly, as plaintiff has argued, it appears that Dr. Kamin and Dr.

Juriga both found that plaintiff lacks the useful ability to interact

appropriately with the generally public, yet concluded in their opinions that

plaintiff remains capable of performing work in a "low contact setting,"

without any specification regarding whether "low contact" would allow for

interaction with the general public specifically.  I agree that this appears to

create an inconsistency between those sources' worksheets and opinions

that the ALJ was required to reconcile.

I note, in that regard, that despite this potential internal inconsistency,

the ALJ did not mention the "markedly limited" finding when concluding that

the state agency physicians' opinions are persuasive.  To make matters

worse, the ALJ found that those opinions are consistent with an ability to

perform occasional interaction with others, including the general public.  AT

14-16.  Accordingly, even if "low contact" could be reasonably interpreted

as being consistent with a markedly limited ability to interact with the

general public specifically – something which is not entirely clear – the ALJ

clearly did not interpret it in that way, and found a level of ability to interact

with the general public that appears to be inconsistent with the state

agency physicians' findings.  His failure to articulate the rationale for

16

resolving this inconsistency in favor of allowing occasional contact with the general public frustrates meaningful review and constitutes error.

Relying on certain case law, the Commissioner argues that a marked limitation is not inherently inconsistent with the ability to perform an activity occasionally. That contention is undermined by the fact that "markedly limited" is specifically defined in this instance as suggesting no useful ability to function in such area. The cases relied upon by the Commissioner, which use different definitions of "marked," are therefore distinguishable.

Because it is not clear that the state agency physicians' opinions actually support the ALJ's finding that plaintiff can interact occasionally with the general public and the ALJ failed to reconcile the above-noted apparent inconsistency contained within that opinion before ostensibly relying on it, I find that the ALJ's assessment of this opinion was erroneous.

I must next address the question of whether the perceived error is harmful. I note that the only aspect of social functioning implicated by this error is interacting with the general public, as the state agency physicians selected only "moderately limited" for areas related to interaction with supervisors and coworkers, and, in that respect, the opined "low contact" limitation appears to be consistent with the ALJ's finding for occasional

interaction as to supervisors and coworkers.[8]  *See, e.g.*, *Yasmine B. v. Comm'r of Soc. Sec.*, 19-CV-0620, 2021 WL 1572509, at *6 (W.D.N.Y. Apr. 22, 2021) (finding RFC for occasional social interaction to be sufficiently consistent with opinion for a low contact setting); *Michael V. v. Comm'r of Soc. Sec.*, 18-cv-0481, 2019 WL 4276722, at *5 (N.D.N.Y. Sept. 10, 2019) (Suddaby, C.J.) (finding that "the RFC limitation to occasional work interactions with the public, co-workers, and supervisors is consistent with the medical opinion of… Dr. Juriga [that Plaintiff could do "low contact work"]").  Although there is no indication from the vocational expert's testimony regarding whether plaintiff could perform the identified jobs if he were restricted to no interaction with the general public, Social Security Ruling ("SSR") 85-15 indicates that the basic mental demands of unskilled work include the ability to respond appropriately to supervision, coworkers and usual work situations, and that unskilled jobs "ordinarily involve dealing primarily with objects, rather than data or people."  SSR 85-15.  The basic mental demands of unskilled work therefore do not appear necessarily to

---

[8]     Because "low contact" reasonably equates to an occasional capacity to interact with others, I reject plaintiff's argument to the extent that he asserts that the ALJ's finding regarding an occasional ability to interact with supervisors and co-workers is not supported by substantial evidence. The ALJ provided reasons for rejecting the portions of the opinions from consultative examiner Dr. Mary Ann Moore and family nurse practitioner ("FNP") Dan Babcock, addressing that issue, that he found to be unpersuasive. AT 16-17.

require interaction with the general public.  However, because it there is no

explicit guidance which would conclusively show that such a limitation

would not result in a finding of disability, if accepted, I conclude that the

error is not harmless, and that remand is therefore warranted for further

proceedings.

### b.  Other Alleged Errors

As to plaintiff's other alleged errors, I find that only a brief discussion

is warranted given the finding of error above and the necessity for remand.

Plaintiff first has argued that the ALJ erred in failing to include a limitation

related to staying on task and maintaining attendance, asserting that all

four opinion providers indicated that plaintiff has limitations in this area but

the ALJ nonetheless failed to include a corresponding limitation within the

RFC.  I find this argument to be unpersuasive.

It is true, as plaintiff asserts, that Dr. Juriga and Dr. Kamin did find in

their work sheets that plaintiff is "moderately limited" in various abilities

related to concentration, attention, and pace, although they ultimately found

that plaintiff was not precluded from performing the basic mental demands

of unskilled work.  AT 56-58, 67-69.  SSR 85-15 defines the basic mental

demands of unskilled work as the abilities to understand, carry out and

remember simple instructions, to respond appropriately to supervision,

coworkers and usual work situations, and to deal with changes in a routine work setting.  SSR 85-15.  The ALJ's RFC roughly tracks these basic mental demands of unskilled work, and therefore is consistent with his finding that such opinion is persuasive.

Plaintiff appears to argue that the ALJ was required to adopt greater specific limitations related to off-task time or attendance because, in their work sheets, those sources both found plaintiff to be moderately limited in some areas, but that is not consistent with the applicable POMS.  Notably, unlike with a finding that the claimant is markedly limited in the worksheet portion of the opinion form, a selection of the option "moderately limited" on the applicable worksheet merely means that the relevant function is impaired to some unspecified degree.  POMS DI 24510.063.B.2.  The source is then required to describe the degree and extent of the limitation in the narrative portion.  *Id.*  In this instance, Dr. Juriga and Dr. Kamin both found that plaintiff was "moderately limited" – again, merely that he had some non-negligible impairment in the area – but explained in their narratives that, overall, he retains the ability to perform the basic mental demands of unskilled work in a low contact environment.[9]  Accordingly,

---

[9]    This case is distinguishable from *Claudio-Montanez v. Kijakazi*, 2022 WL 17819123 (2d Cir. 2022).  In that case, the Second Circuit found that it was error for the ALJ to draw an inference that the claimant had no limitations related to a need for off-

contrary to plaintiff's argument, the ALJ was not required to interpret the

state agency physicians' opinions as indicating any type of greater

limitation related to staying on task or attendance, and, further, the opinion

evidence does not unanimously support the existence of such limitations at

a specific material degree such that the ALJ would have been required to

provide an overwhelmingly compelling reason for finding such limitations do

not exist.[10]

 The ALJ further provided reasons as to why he found the opinions

from Dr. Moore and FNP Babcock, both of whom opined a need for

significant off-task time and/or absences, to be unpersuasive, noting that

he found those opinions to be inconsistent with the evidence, including Dr.

---

task time or absenteeism from an opinion that plaintiff could perform the physical
requirements of full time sustained work. *Claudio-Montanez*, 2022 WL 17819123, at *5.
Unlike the relevant opinion in that case, the state agency physicians specifically
considered plaintiff's off-task or absenteeism needs when completing their pre-opinion
work sheet, but ultimately found that any degree of restriction she might experience
related to those did not require any additional or specific work-related limitation.

[10]     I note that, although the state agency sources did indicate that they believed
there was some degree of limitation in plaintiff's ability to attend a workday, their use of
"moderate" as that term is defined by the POMS is simply so vague that I cannot say
that it was unreasonable for the ALJ to interpret that finding, in conjunction with the
sources' ultimate opinions and in light of the rest of the evidence, as not being
significant enough to impose any additional work-related limitations beyond what was
accounted for in the RFC. However, to the extent that the ALJ does not specifically
explain how he interpreted "moderate" here when assessing the narrative opinions, I
note that this matter is already being remanded for consideration of the social limitations
from the state agency sources' opinions, and therefore the agency should ensure that it
considers the totality of these sources' findings and opinions when evaluating them
again on remand.

Moore's examination report and plaintiff's reports of activities of daily living. AT 16-17, 282, 316-17.  Although plaintiff argues that these findings are not supported by substantial evidence, I disagree.  While plaintiff did report difficulty getting along with people in particular, as the ALJ acknowledged, he testified at the hearing that he is able to complete his activities of daily living fairly normally as far as his mental impairments are concerned, including being able to spend time with family and grocery shop with a list. AT 36-37, 39.  He reported experiencing issues with his memory, but accommodates for that by writing things down and keeping an appointment book.  AT 39-42.  At his examination with Dr. Moore, plaintiff did report symptoms, including that being around groups of people trigger his symptoms and that he feels he has poor memory, concentration and organizational skills, and Dr. Moore observed that he was restless, had somewhat impaired concentration, impaired attention and memory due to both learning and attentional issues, and poor insight with poor judgment due to reported mood swings and "extreme agitation towards others."  AT 280-81.  I note, however, that Dr. Moore observed that plaintiff was generally cooperative and his manner of relating was fair.  AT 280-81. There is very little medical treatment documented in the record, although plaintiff did state at a mental health intake in February of 2020 that,

although people are the thing that cause him to become most upset, he can calm down if people leave him alone for a short time, if he is able to talk with or spend time with his family, if he is able to be home, or if he can play games or listen to music.  AT 298.  Further, plaintiff reported to NP Babcock in August of 2020 that he was seeking a mental health referral to resume counseling, stating that he also wished to restart Haldol, which he had not been taking for approximately two months and, although he had been doing fairly well without it, he wanted to resume that.  AT 311. Plaintiff further reported that listening to music helps ease his feelings of anxiety and depression.  *Id.*  Based on this evidence, I find the ALJ's conclusion that the significant restrictions opined by Dr. Moore and NP Babcock are not consistent with the evidence as a whole to be reasonable and supported by substantial evidence.

Plaintiff further argues that the ALJ failed to develop the record by making no attempt to obtain records from SCI Somerset and SCI Coal Township, where plaintiff received treatment for his relevant impairments during his incarceration.  Dkt. No. 11, at 14-15.  Following submission of plaintiff's brief, the Commissioner filed a supplemental transcript containing documentation revealing that the agency had, in fact, made attempts to obtain evidence for the time period of January 1, 2017 through the date of

23

the letters from both of those facilities in December of 2019.  Dkt. No. 12.  I

note as an initial matter that plaintiff's application for benefits was filed in

November of 2019, such that the ALJ had a duty to obtain evidence only

back to November of 2018 under the applicable regulation.  20 C.F.R. §

416.912(b)(ii) (stating that the "complete medical history" the ALJ must

obtain is "the records of your medical source(s) covering at least the 12

months preceding the month in which you file your application").  Plaintiff

has offered no argument regarding what legal authority would have

required the ALJ to seek evidence from as far back as 2010 through 2014,

which were the dates provided for the treatment from SCI Somerset.  That

notwithstanding, the regulation requires only that the ALJ make "every

reasonable effort" to obtain relevant information, which is specifically

defined as an initial request followed by a follow-up request within 10 or 20

days after the initial request.  20 C.F.R. § 416.912(b)(i).  The evidence in

the supplemental transcript therefore reflects that "every reasonable effort"

was made as required by the applicable regulations, and the ALJ had no

further duty.  Moreover, as the Commissioner highlights, when asked at the

administrative hearing whether any records were outstanding, plaintiff's

representative responded that the outstanding records consisted of those

from Family and Children's Society, and did not mention any outstanding

records from SCI Somerset or SCI Coal Township.  AT 31-32.  As a result,

I find that there is no merit to plaintiff's argument that the ALJ failed to

properly develop the record as to any treatment evidence from SCI

Somerset and SCI Coal Township.

Lastly, plaintiff argues that the ALJ's step five finding is not supported

by substantial evidence because the hypothetical question submitted to the

vocational expert was incomplete.  Dkt. No. 11, at 15-16.  Because the ALJ

will need to reassess his step five finding in light of the errors identified

related to the state agency sources' opinions addressing plaintiff's ability to

interact with the general public, I find that there is no need to discuss this

point.

IV.    <u>SUMMARY AND ORDER</u>

After considering the record as a whole and the issues raised by the

plaintiff in support of his challenge to the Commissioner's determination, I

find that the determination did not result from the application of proper legal

principles and is not supported by substantial evidence.  Accordingly, it is

hereby

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt.

No. 11) be GRANTED, defendant's motion for judgment on the pleadings

(Dkt. No. 13) be DENIED, the Commissioner's decision be VACATED, and

this matter remanded for further proceedings consistent with this decision

and order, without a directed finding of disability, pursuant to sentence four

of 42 U.S.C. § 405(g); and it is further respectfully

      ORDERED that the clerk enter judgment consistent with this opinion.

Dated:     March 20, 2023
            Syracuse, NY

                                      DAVID E. PEEBLES
                                      U.S. Magistrate Judge